UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| HEATHER SUSANNE BELLARDINE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:18-cv-00653-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW SAUL, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Heather Susanne Bellardine seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied her claim for supplemental security income benefits. Ms. Bellardine brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Ms. Bellardine's motion for summary judgment but will GRANT judgment in favor of the Commissioner.

**I**

Plaintiff Heather Susanne Bellardine filed an application for disability insurance benefits on July 21, 2015, alleging disability beginning in July 2013. [Tr. 260–65.] Ms. Bellardine's motion for summary judgment explains that Ms. Bellardine suffers from several conditions, including "obesity, ankylosing spondlyitis, degenerative disc disease of the lumbar spine with radiculopathy, bilateral hand pain, degenerative joint disease of the hip, a history of stress fracture of the left femur, bilateral knee pain, bilateral ankle pain, chronic pain syndrome, inflammatory polyarthritis, mononeuritis multiplex, headaches, depression/anxiety, interstitial

systitus, and insomnia/narcolepsy." [R. 10 at 3.] Ms. Bellardine's application was denied initially and upon reconsideration. [Tr. 141, 143.] Ms. Bellardine requested a hearing, which was held before Administrative Law Judge (ALJ) Jonathan Stanley on May 9, 2017. [Tr. 106-40.] Following the hearing, ALJ Stanley issued a final decision denying Ms. Bellardine's claim for benefits. [Tr. 86–105.]

To evaluate a claim for disability insurance benefit claims, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

ALJ Stanley's written decision proceeds sequentially through the five steps. [Tr. 91.] At the first step, ALJ Stanley found that Ms. Bellardine had not engaged in substantial gainful activity since July 9, 2015, the alleged onset date. *Id.* Ms. Bellardine indicates she stopped working in 2001 to become a stay at home mom. *Id.* Next, at the second step, ALJ Stanley found that Ms. Bellardine suffered from the following severe impairments: "(a) obesity; (b) ankylosing spondylitis; (c) degenerative disc disease of the lumbar spine with pain/radiculopathy; (d) bilateral wrist pain by report; (e) bilateral hand pain by report; (f) degenerative joint disease of the hips with pain; (g) history of stress fracture of left femur; (h) bilateral knee pain/bursitis; (i) bilateral ankle pain by report; (j) chronic pain syndrome; (k) inflammatory polyarthritis; (l) arthritis; (m) fibromyalgia; (n) psoriasis with psoriatic anthropathy/arthritis; and (o) mononeuritis multiplex." [Tr. 92.] ALJ Stanley also found that Ms. Bellardine had a number of non-severe impairments, including narcolepsy without cataplexy and irritable bowel syndrome, among other impairments. *Id.*

In addition to physical impairments, Ms. Bellardine suffers from depression and anxiety. ALJ Stanley considered Ms. Bellardine's mental impairments by evaluating the four broad functional areas set out in the disability regulations. *See* 20 C.F.R., Part 404, Subpart P,

Appendix 1. The ALJ found only a mild limitation on functional area one—understanding, remembering, or applying information. [Tr. 95.] Although Ms. Bellardine reported problems with her memory, she also reported her hobbies included reading and watching television. *Id.* As for the second functional area, ALJ Stanley found Ms. Bellardine had no limitation on interacting with others, and notes Ms. Bellardine has made no complaints in that regard. *Id.* The third functional area is concentrating, persisting, or maintaining pace. ALJ Stanley found Ms. Belleardine has "a mild limitation on concentrating, persisting, or maintaining pace," based on her reported difficulty completing tasks and concentrating. The fourth functional area is adapting or managing oneself. ALJ Stanley found no impairment. Ms. Bellardine is a single parent who manages her own household with her teenage daughters. *Id.* Ultimately, the ALJ adopted the opinions of Drs. Kay Barnfield and Lea Perrit, and rejected the opinion of Dr. Dustin Devers, and concluded that Ms. Bellardine's depression and anxiety is a non-severe impairment. *Id.*

At step three, ALJ Stanley found that Ms. Bellardine did not have an impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. The ALJ specifically considered listings 1.02, 1.04, 1.06, 8.05, 11.14, and 14.09, but found that no treating or examining physician had made any findings that would satisfy the requirements of these listings.

At step four, ALJ Stanley found that Ms. Bellardine had the residual functional capacity (RFC) to perform "a limited range of light work." [Tr. 96.] In making his assessment, ALJ Stanley found that Ms. Bellardine's medically determinable impairments—migraines, depression, diabetes, stage 1 kidney failure, asthma, an accelerated heart rate, interstitial cystitis, ankylosing spondylitis, psoriasis, osteopenia, narcolepsy, psoriatic arthritis, and irritable bowel

syndrome— could reasonably be expected to cause the issues and symptoms Ms. Bellardine describes. However, the ALJ found that Ms. Bellardine's "statements concerning the intensity, persistence and limiting effects of those symptoms" are not entirely consistent with the medical evidence in the record. Despite her diagnoses, which contribute overall to chronic pain, ALJ Stanley noted "only minimal objective medical findings in the record of any consequence." [Tr. 98.] The ALJ also give little weight to the medical opinions of Dr. Devers and Dr. Ahmed, finding them to be "premised upon the claimant's subjective reports," and "not supported by objective medical findings in the record." *Id.* at 99.

Ms. Bellardine has not worked since 2001, when she became a stay at home mother. Therefore, she has no past relevant work. *Id.*; 20 C.F.R. 416.965. ALJ Stanley credited the testimony of vocational expert Laura Lykins, who testified that somebody with Ms. Bellardine's characteristics could find work in the national market as a cashier, doing assembly bench work, or as a sorter or packer. Thus, considering the record before him, ALJ Stanley found Ms. Bellardine has not been under a disability, as defined in the Social Security Act, from July 9, 2015, the date of the application. This appeal followed.

**II**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone

of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## A

Ms. Bellardine argues that the ALJ improperly weighed the medical opinion evidence of Dr. Devers and Dr. Ahmed. [R. 10 at 6.] According to Ms. Bellardine, the ALJ's conclusion that their opinions were "not supported by objective medical findings . . . is not supported in law or fact[.]" *Id.*

The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source. The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not

> give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(c)(5); 416.927(c)(2)(i)-(ii), (c)(3)-(c)(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants [to] understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (citation and internal quotation marks omitted). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546.

The ALJ's written opinion explains he assigned little weight to the opinions of Dr. Devers and Dr. Ahmed. These opinions were given little weight because they "appear to be premised upon the claimant's subjective reports. They are not supported by objective medical findings in the record." [Tr. 99.] ALJ Stanley pointed to medical treatment notes which describe Ms. Bellardine's gait, motor strength, motor tone, and coordination as "normal." *Id.* He credited evidence in the record that Ms. Bellardine is reasonably active in that she participates in yoga and is able to attend her children's sporting events. *Id.* Finally, the ALJ relied on a "plethora of benign diagnostic studies in the evidence," including x-rays and MRI scan results. *Id.*

The opinions of treating physicians are only given substantial deference "when supported by objective medical evidence." *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The fact that Dr. Dever's and Dr. Ahmed's opinions were not supported with treatment records and, then, is a good reason for assigning the opinion only partial weight under the relevant regulations. *See* 20 C.F.R. § 404.1527(c)(3) (explaining the importance of supportability and noting that "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"). Furthermore, the Court notes that the ALJ appropriately gave at least some consideration to Dr. Dever's and Dr. Ahmed's opinions. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *Fisk*, 253 F. App'x at 585. Ultimately, the ALJ found Ms. Bellardine was limited to performing only light work. The Court reviews the ALJ's written decision under substantial evidence review. Even if there is substantial evidence that would support a different conclusion, the decision must be affirmed. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Based on the foregoing, there is substantial evidence to support ALJ Stanley's findings.

**B**

Next, Ms. Bellardine argues that the ALJ erred in failing to find that Ms. Bellardine's narcolepsy is a severe impairment at step two of his analysis. [R. 10 at 10.] A "severe impairment" is one that substantially limits a claimant's work activity. Ms. Bellardine argues it is "common sense that a person experiencing three drowsy states each day would be off task for significant periods of time." [R. 10 at 12.]

The ALJ did not err in categorizing Ms. Bellardine's narcolepsy as a non-severe impairment, but if it was error, that error was harmless. At step two, the ALJ makes a determination whether a claimant has a condition or combination of conditions that qualifies as "severe." 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921(a). If a claimant suffers from one or more severe impairments, the ALJ proceeds to step three. If not, the analysis ends and the claimant is found not disabled. ALJ Stanley's finding of non-severe impairment is supported by the record. Ms. Bellardine herself reported that she had been on medication for over a year and was responding well to treatment. [Tr. 127 (Q. Do you still, even with this medication, do you still have daytime drowsiness? A. Not so much now. Q. Okay. A. Because this medication is extremely strong. Q. Do you sleep during the day at all now? A. No.).]

Further, even if it was error to assess her narcolepsy as a non-severe impairment, Ms. Bellardine was not harmed. Although ALJ Stanley did not find Ms. Bellardine's narcolepsy was a severe impairment, he identified fifteen other conditions amounting to severe impairments and proceeded with step three of the analysis. Despite classifying it as non-severe, ALJ Stanley considered Ms. Bellardine's narcolepsy as one of her non-severe impairments when assessing her RFC. *Fisk v. Astrue*, 253 Fed. App'x 580, 584 (6th Cir. 2007) (quoting *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) ("Because the ALJ considered

these impairments when determining Fisks' residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two.")).

### III

Importantly, the Court must uphold the ALJ's decision even if the Court would weigh the evidence differently, and even if substantial evidence also supports Ms. Bellardine's arguments. *See Ulman*, 693 F.3d at 714; *McMahon*, 499 F.3d at 509. While substantial evidence may, therefore, support some of Ms. Bellardine's positions, she has not demonstrated that the ALJ's decision was not also supported by substantial evidence or that the ALJ failed to follow applicable procedural rules. Further, it was not error for the ALJ to term Ms. Bellardine's diagnosis of narcolepsy as non-severe, or if it was, the error was harmless. For the reasons discussed above, the Court denies the motion for summary judgment filed by Ms. Bellardine but grants summary judgment in favor of the Commissioner.

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. The Plaintiff's Motion for Summary Judgment [R. 10] is **DENIED**;
2. The Commissioner's Motion for Summary Judgment [R. 12] is **GRANTED**; and
3. Judgment in favor of the Commissioner shall enter promptly.

This the 16th day of March, 2020

Gregory F. Van Tatenhove
United States District Judge